<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MANSA MUSA MASSI, | : | |
| | : | Civil Action No. 10-4802 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DONNA ZICKEFOOSE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Mansa Musa Massi
#36603-118
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

**BUMB**, District Judge

Plaintiff Mansa Musa Massi, a prisoner currently confined at FCI Fort Dix, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review. Plaintiff claims numerous issues within the Complaint.

Plaintiff alleges that during the time he was housed at FCI Fort Dix "westside," from November 11, 2009 until December 6, 2009, he was unnecessarily exposed to inclement weather conditions while waiting in an outdoor area while submitting and retrieving commissary orders.  He states that there is an overhead partition without side or front panels to protect inmates from the weather.  Plaintiff alleges that the overhead partition is large enough to accommodate approximately 50 of the 300-500 inmates who shop there Monday through Thursdays and who are subjected to the elements as they wait one to two hours for their commissary order to be filled.  He further states that November and December of 2009 had a large amount of rain and snow.  He states that he, up to four times a week, had to wait outside the dining hall in inclement weather and as a result often ate his meal in wet clothing.  In terms of relief sought,

Plaintiff seeks the issuance of an order directing the defendants to enlarge and enclose the existing overhead partition outside the commissary area.

Plaintiff alleges that on November 19, 2009, at approximately 6:30 a.m., he had to stand outside the clothing issue department in pouring rain to await receipt of his first issue of clothing.

Plaintiff states that on December 6, 2009 he was transferred to the eastside, which is a "mirror image of Fort Dix westside" except that he did not have to stand outside to await issuance of clothing.

Plaintiff alleges that the ventilation in both buildings do not function properly, including vents not blowing air properly in certain rooms and lack of vents in the halls and stairways. He claims the existence of asbestos dust and unpleasant smells.

Plaintiff alleges that his fingernails have been infected. He alleges that upon seeking treatment, he was told by PA Magalone that the BOP does not treat fungus of nails and was prescribed an over-the-counter medication to be purchased at the commissary.  He alleges that the commissary does not carry the prescribed medication.

Plaintiff alleges that while confined at FCI Cumberland, he was enrolled in the Heating, Ventilation, and Air Conditioning ("HVAC") Apprenticeship program and had accumulated approximately

4000 hours.  He states that according to his contract, he was to earn $.29 per hour.  He states that after transfer to FCI Fort Dix, he enrolled in the HVAC program there, but was only paid $.12 per hour.

Plaintiff alleges that between December 6, 2009 and December 10, 2009 he filed with counselor R. Little administrative remedy forms or Inmate Request to Staff forms concerning prison conditions.  He claims that this "angered" R. Little due to the time that it took to process the paperwork.  On December 15, 2009 Plaintiff filed an administrative remedy form on R. Little and M. Clark for their refusal to process earlier requests.

Plaintiff alleges that on January 11, 2010 Counselor R. Little issued him a disciplinary infraction Code 330 for being unsanitary or untidy.  The infraction form noted that Plaintiff had an extra blanket and a prayer rug at the bottom of his bed, yet Plaintiff alleges that his bed was made according to the photo listed on a bulletin board.  He states that a memorandum was posted regarding many improperly made beds, but that he received the only infraction citation.  He alleges that this infraction was issued in retaliation for Plaintiff filing administrative remedies on R. Little and other members of the staff.  During a hearing before the Unit Disciplinary Committee, Plaintiff requested a clarification of the written infraction and also requested staff representation.  He alleges that he received

4

neither and was found guilty of the infraction and sentenced to thirty days commissary restriction and thirty days visitation restriction.

Plaintiff alleges that on March 31, 2010, R. Little asked him whether he had a bottom bunk pass, to which Plaintiff responded that he did not.  Plaintiff states that he was moved to a top bunk within an hour.  Plaintiff alleges that he fell from the top bunk on June 14, 2010 after using a chair to attempt to climb to the top bunk.

Plaintiff alleges that in November of 2009 he requested an eye exam, but still having not been placed on the list by February 10, 2010, he filed an administrative remedy form to request an appointment.  Plaintiff states that heavy snow prevented many staff from getting to work on February 10, 2010. On that date, there was no list posted at 7:30 a.m. when Plaintiff went to work; however, after lunch he saw that a list had been posted and that he missed his appointment.  He then went to the hospital to explain the situation.  He was told that he would be rescheduled.  Plaintiff states that he was called for an appointment on February 18, 2010, at which time the doctor asked him to drop the administrative remedy form that Plaintiff had filed regarding the lack of appointment because it had been "informally resolved" (presumably by Plaintiff actually receiving the appointment on that date).  Plaintiff states that he was told

that if he did not drop the complaint, he would not receive the
medical care; however he does not allege that he actually did not
receive the appointment and requested medical care.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,
certain in forma pauperis and prisoner actions that are
frivolous, malicious, fail to state a claim, or seek monetary
relief from a defendant who is immune from such relief.   See 28
U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.
§ 1915A (actions in which prisoner seeks redress from a
governmental defendant); 42 U.S.C. § 1997e (prisoner actions
brought with respect to prison conditions).

Moreover, no action may be brought by a prisoner with
respect to prison conditions unless the prisoner has exhausted
available administrative remedies.   42 U.S.C. § 1997e(a).
Specifically, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits
about prison life, whether they involve general circumstances or
particular episodes, and whether they allege excessive force or
some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002)
(citation omitted).   Although failure to exhaust is an

affirmative defense which must be pled by the defendant, a district court has inherent power to dismiss a complaint which facially violates this bar to suit.  See Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The Third Circuit observed in Nyhuis, however, that an inmate may satisfy § 1997e(a) through substantial compliance. "Without embellishing - for the case law in the area will have to develop - we note our understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-8.  See also Veteto v. Miller, 794 F.2d 98, 99-100 (3d Cir. 1986) (vacating sua sponte dismissal based upon failure to exhaust BOP's Administrative Remedy Program where prisoner alleged that he had "repeatedly requested administrative remedies" from the defendants with no response or success, and remanding to enable plaintiff "to amend his complaint so as to supply more specific facts on this subject and to enable the court to hold a preliminary hearing, if needed").

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

7

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

8

Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

9

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated. The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such
> an entitlement with its facts. <u>See Phillips</u>, 515 F.3d
> at 234-35. As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III. <u>Bivens v. Six Unknown Agents</u>

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, <u>see Carlson v. Green</u>, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, <u>see Davis v. Passman</u>, 442 U.S. 228 (1979).

Actions brought under <u>Bivens</u> are the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel," there is a "general trend" to incorporate § 1983 into <u>Bivens</u> suits. <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and the

laws of the United States; and (2) that the deprivation of the right was caused by an official action under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F.Supp. 129, 132 (D.Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

## IV.   ANALYSIS

### A.   Claims Regarding Alleged Conditions of Confinement

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at

346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a

14

substantial risk of harm to inmate health or safety." <u>Ingalls v.</u>
<u>Florio</u>, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff has not alleged sufficient facts to allow
his claims progress past the screening stage.  The facts alleged
do not sufficiently show the existence of the objective and
subjective components.  Plaintiff's allegations do not appear to
be "extreme deprivations" nor has he alleged that a state actor
has acted with "deliberate indifference" to deprive Plaintiff of
the constitutional protections afforded to him by the Eighth
Amendment.[1]  As such, the claims regarding alleged constitutional
violations regarding conditions of confinement will be dismissed.

B.    <u>Claims Regarding Disciplinary Hearing</u>

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or state or federal law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466
(1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409
(3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process

_____

[1]    In fact, Plaintiff sets forth in his Complaint that
defendant Zickefoose responded to Plaintiff's allegations of
being exposed to inclement weather by informing him that the
commissary was considered a privilege and encouraging Plaintiff
to use the cold weather clothing he had been provided.

Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

Governmental entities, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from

16

restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

To the extent that Plaintiff is asserting allegations of violation of due process as related to the disciplinary hearing, the Court reserves judgment on the issue at this juncture as the mere existence of the underlying disciplinary citation is linked by Plaintiff to the alleged retaliation as discussed below.  As such, this aspect of Plaintiff's claim may proceed on a contingent basis as related to the claim of retaliation, subject to potential dismissal at a later date as the issue of the alleged retaliation is determined by the Court.

C.   <u>Claims Regarding Alleged Retaliation</u>

Retaliation claims survive <u>Sandin</u>, even when the retaliatory action does not involve a liberty interest.  <u>Allah v. Seiverling</u>, 229 F.3d 220, 223-24 (3d Cir. 2000).  To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  <u>Rauser v. Horn</u>, 2001 WL 185120 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225).

Here, Plaintiff's claims appear to allege that his filing of grievances was the substantial or motivating factor in Defendant R. Little's decision to file a disciplinary infraction against

18

Plaintiff.  As such, this claim survives the screening stage and shall be permitted to proceed, however, those claims may proceed as against defendants R. Little (counselor), M. Clarke (case manager), and L. Wilson (case manager) only.

The claims must be dismissed as against Defendants Donna Zickefoose (warden), J. L. Norwood (regional director), and Harrell Watts (administrative remedy coordinator) as Plaintiff has not shown that those defendants were personally involved in the alleged violation of his rights, since government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).  In Iqbal, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only knowledge or acquiesced in the conduct of their subordinates.  Id. at 1949.  As such, the supervisory defendants must be dismissed from this claim.

19

D.   <u>Claims Regarding Alleged Deprivation of Property</u>

The Supreme Court has made it clear that a negligent or intentional deprivation or property does not violate the Due Process Clause where meaningful post-deprivation remedies for the loss are available. <u>Hudson v. Palmer</u>, 468 U.S. 517, 530-36 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981), <u>overruled in part on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986).

The U.S. Bureau of Prisons grievance procedure provides an adequate post-deprivation remedy.  The existence of this post-deprivation remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process. *Iseley v. Horn*, 1996 WL 510090, at *6 (E.D.P.A. Sept. 3, 1996).

Here, Plaintiff fails to establish facts related to whether he is entitled to the higher pay rate at the transferee facility, and further fails to give any facts supporting that prison officials deprived him of any such pay increase.  But even assuming for the purposes of analysis that Plaintiff did incur a deprivation of property, such a deprivation would not be a cognizable constitutional claim, as Plaintiff has available to him alternate adequate post-deprivation remedies.  Plaintiff is not entitled to constitutional relief on this issue since the allegations set forth as to this issue fail to state a claim of due process violation and as such, this claim will be dismissed.

E.    <u>Claims Regarding Alleged Denial of Medical Care</u>

Plaintiff asserts that defendants violated his Eighth Amendment right to adequate medical care.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

21

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"  Id. at 347 (citation omitted).

Here, Plaintiff's allegations regarding medical concerns do not rise to the level of deliberate indifference to serious medical need and as such do not survive the screening stage.  As to the claim related to the treatment of his fingernails, Plaintiff has shown no deliberate indifference.  He was seen for

23

the issue and received the treatment that he was advised was standard BOP procedure for his particular affliction.  As to the claim related to eye care, while Plaintiff does indicate a delay of a few days before he was seen for an appointment, Plaintiff has shown no facts to indicate that he did not actually receive the treatment.  As such, this claim will be dismissed.

## V.   CONCLUSION

For the reasons set forth above, certain claims will be dismissed for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[2]

An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: October 7, 2011

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.